# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MAYBEL OCANA,**

    **Plaintiff,**

    **v.**                                                 CIV. No. 99-233 JP/LCS

**MESA VISTA CONSOLIDATED SCHOOLS,
and VERNON JARAMILLO, MESA VISTA
SCHOOL DISTRICT SUPERINTENDENT, in
his official capacity only,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On January 4, 2000, Defendants Mesa Vista Consolidated Schools and Vernon Jaramillo filed a Motion to Partially Dismiss Amended Complaint, (Doc. No. 31). After a careful review of the briefs and the relevant law, I conclude that Defendants' motion should be granted and Plaintiff's retaliation claims brought under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act should be dismissed for lack of subject matter jurisdiction.

**I.    LEGAL STANDARD**

Defendants filed their motion to dismiss under Fed. R. Civ. P. 12(b)(1). Both parties have submitted evidence in connection with this motion. Because a court may consider matters outside the pleadings in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, *see Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987), I have considered this evidence.

## II. BACKGROUND

This case arises out of Plaintiff Maybel Ocana's employment with the Mesa Vista School Board. Plaintiff claims that Defendants' discriminatory and retaliatory conduct forced her to resign on April 1, 1998. Plaintiff's amended complaint alleges federal and state claims against Defendant Vernon Jaramillo and Defendant Mesa Vista School Board of Education. Count II of Plaintiff's first amended complaint alleges that ("School Board") are liable for retaliation under Title VII of the Civil Rights Act of 1964 and under the Age Discrimination in Employment Act ("ADEA").[1]

## III. DISCUSSION

Defendants argue that Plaintiff's Title VII and ADEA retaliation claims should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to exhaust her administrative remedies and because none of the exceptions to the exhaustion rule apply to Plaintiff's retaliation claims.

### A. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is a prerequisite to bringing suit under Title VII and the ADEA." *Wood v. City of Topeka*, 90 F. Supp. 2d 1173, — , No. Civ.A. 98-4011-DES, 2000 WL 287027 (D.Kan. 2000) (citing *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997)), *judgment amended by* — F. Supp. 2d. — , No. Civ. A. 98-4011-DES, 2000 WL 554176 (D.Kan. April 14, 2000). To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e) and (f)(1) (1994); 29

---

[1] Count II of Plaintiff's amended complaint is titled "ADEA and Title VII: Retaliation (MVSB)." Although this indicates that the claims brought in Count II are alleged only against Defendant Mesa Vista Consolidated School Board, both Defendants filed the motion to dismiss.

U.S.C. § 626(d). A charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. It must also contain a "clear and concise statement of the facts . . . ." 29 C.F.R. § 1601.12(3). The purpose of requiring a complainant to file a charge of discrimination with the EEOC is "to provide notice of the alleged violation to the charged party, and to provide the [EEOC] with the opportunity to conciliate the claim." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.) (citation omitted), *cert. denied*, 522 U.S. 935 (1997).

Plaintiff admits that her June 22, 1998 EEOC charge of discrimination alleges only age discrimination claims. She nevertheless contends that she exhausted her administrative remedies by amending or supplementing the charge when she filed with the EEOC a document called "Entry of Appearance, Statement of Harm and Charge of Discrimination," ("Entry of Appearance"), that mentions retaliation. In support of her argument Plaintiff cites 29 C.F.R. § 1601.12(b) (stating that a "charge may be amended to cure technical defects or omissions"). Plaintiff argues that she "further renewed" her retaliation charge when she submitted to the EEOC her "Complainant's Rebuttal," (Ex. 4 to Resp.), to rebut Defendants' response to her charge of discrimination.

Plaintiff correctly asserts that her failure to check the retaliation box on her charge of discrimination, or to otherwise allege retaliation in the narrative section of her charge, is not dispositive of whether she exhausted her administrative remedies. *See Gunnell v. Utah Valley State College* 152 F.3d 1253 (10th Cir. 1998). In *Gunnell*, the Tenth Circuit considered whether the plaintiff had exhausted her administrative remedies regarding her sexual harassment claim, which was not contained in the original charge of discrimination but was included in a subsequently filed supplement. *See id*. Based on the supplemental charge of discrimination and

plaintiff's affidavit stating that she had filed it, the Tenth Circuit concluded that the plaintiff had exhausted her administrative remedies as to the sexual harassment claim. *Id*. at 1260.

*Gunnell* is distinguishable from this case because here Plaintiff never submitted an actual supplement to her charge of discrimination. Plaintiff's undated Entry of Appearance appears to have been submitted to the EEOC at the same time Plaintiff submitted her charge of discrimination.[2] (Ex. 2 to Resp.) While the Entry of Appearance provides a chronology of events involving the Plaintiff and summarizes her claims, it does not qualify as an amendment or supplement to the EEOC charge because it is neither signed nor verified. *See* 29 C.F.R. § 1601.9 (charge must be signed and verified). Plaintiff's rebuttal suffers from the same defect.

Although the Entry of Appearance and Complainant's Rebuttal do not qualify as supplements to the charge of discrimination, the Tenth Circuit has considered whether a plaintiff's submission of documents other than a charge of discrimination was sufficient to establish exhaustion of administrative remedies. *See Welsh v. City of Shawnee*, No. 98-6243, 1999 WL 345597, at *3 (10th Cir. June 1, 1999). In *Welsh* the plaintiff's EEOC charge of discrimination failed to allege any sexual harassment claim. *See id*. Plaintiff nevertheless argued that she had exhausted her administrative remedies with respect to her sexual harassment claim by submitting

---

[2] Plaintiff's second amended complaint avers that the Entry of Appearance was submitted to the EEOC "*[s]ubsequent* to the issuance of the Charge of Discrimination." (Compl. at ¶ 2(c).; emphasis added.) In her response, however, Plaintiff states, "the June 1998 Charge of Discrimination was *accompanied* by an Entry of Appearance, Statement of Harm and Charge of Discrimination which acted as a contemporaneous amendment or supplement to the Charge of Discrimination." (Resp. at 2; emphasis added.) The Entry of Appearance states that Plaintiff "hereby submits Complainant's Statement of Harm and Charge of Discrimination." (Ex. 2 to Resp.) Having reviewed the documents and the briefs, the most reasonable inference to be drawn is that the Entry of Appearance was filed at the same time Plaintiff filed her original--and only-- charge of discrimination.

an information sheet to the EEOC describing the alleged incidents of harassment. *See id.* at \*4. The plaintiff contended either that the information sheet should always be considered when a court determines whether a plaintiff exhausted administrative remedies or that she should not be penalized for the EEOC's negligence in failing to include in the charge of discrimination the allegations from the information sheet. *Id.* at \*5. The Tenth Circuit noted that "the formal charge is the key document in getting the Title VII process rolling . . . it must be in writing and signed under oath or affirmation . . . [i]t therefore is the primary, *and usually the only*, place to which courts look to determine whether a plaintiff" exhausted her administrative remedies. *Id.* at \*5 (emphasis added). The Tenth Circuit observed, however, that in two circumstances other courts have considered non-charge documents in determining whether claims were adequately presented to the EEOC: 1.) when it is clear that the plaintiff intended the EEOC to investigate the allegations contained in the non-charge documents; and 2.) when the EEOC has been negligent in handling the plaintiff's claim. *See id.*

In considering whether the plaintiff in *Welsh* had intended the EEOC to investigate the charge of sexual harassment, the Tenth Circuit stated that the plaintiff's "submission of the information sheet to the EEOC may be some indication that at some point she intended it to investigate her harassment allegations. However, her subsequent filing, under oath, of the charge [without the harassment allegations] . . . clearly negated the information sheet." *Id.* The court therefore held that the plaintiff had not clearly intended that the EEOC investigate the harassment claims. *See id.* The Tenth Circuit also concluded that the plaintiff had failed to present evidence supporting her claim that the EEOC was negligent in failing to include her harassment claims in her charge of discrimination. *Id.* at \*6.

Here, Plaintiff contends that because she filed the Entry of Appearance contemporaneously with the charge of discrimination, she established her intent to pursue her retaliation claim. This argument is unpersuasive. At a September 21, 1999 hearing, Plaintiff's counsel (who was representing Plaintiff at the time she filed her charge of discrimination) admitted that Plaintiff had read and signed the charge of discrimination. When asked why the Plaintiff had not corrected the EEOC charge of discrimination to include a charge of retaliation, Plaintiff's counsel said, "I wish we had 20/20 hindsight, but in this case it just happened that she didn't." The fact that Plaintiff included claims of retaliation in her Entry of Appearance, but not in her charge of discrimination, does not make it clear that she intended to bring a retaliation claim. Since the charge of discrimination is the document signed by a plaintiff and verified, it is the primary and most important document to consider when determining which claims a plaintiff intended to make to the EEOC. Moreover, Plaintiff was apparently represented by counsel at the time she filed her charge of discrimination. Had Plaintiff intended to allege a claim of retaliation in her EEOC charge of discrimination, her counsel should have made sure it was included in her charge of discrimination. The Tenth Circuit has required no less from plaintiffs who did not have the advantage of counsel at the time they filed their charges of discrimination. *See Welsh*, 1999 WL 345597 at *5 (holding that plaintiff, who was not represented by counsel at the time she filed her charge of discrimination, failed to show that she clearly intended that the EEOC investigate her harassment claims when plaintiff's information sheet indicated she was pursuing sexual harassment claims but her charge of discrimination did not).

Other documents in the record also militate against a finding that Plaintiff clearly intended the EEOC to investigate her claims of retaliation. A September 25, 1998 letter from an EEOC

investigator to Plaintiff states,

> I have received the Respondent's reply concerning your charge of discrimination . . . in which you allege that you were discriminated against on the basis of your age, 43, in violation of the ADEA of 1967, as amended, by being forced to resign from employment, being denied training, and by being verbally and physically threatened by the Supt. Of Schools.

(Ex. A to Pl. Surreply.) This letter establishes that the EEOC never interpreted Plaintiff's charge of discrimination as alleging a retaliation claim and that Plaintiff was on notice of this fact as soon as she received the September 25, 1998 letter. If Plaintiff had actually intended that the EEOC investigate her retaliation claim, she should have supplemented her charge of discrimination once she realized that the EEOC had interpreted her charge of discrimination as alleging only age discrimination.

The EEOC Request for Information sent to Defendants also fails to mention any claim for retaliation. (Request for Information, Ex. D to Defendant's Memo.) Because Plaintiff has provided no evidence that the Entry of Appearance or Complainant's Rebuttal was ever sent to Defendant, there is no evidence that Defendants had actual notice that Plaintiff was pursuing retaliation claims with the EEOC. To permit Plaintiff to now assert such a claim would be unfair to the Defendants and contravene "the purposes of the requirement of filing a charge with the [EEOC]--to provide notice of the alleged violation to the charged party, and to provide the [EEOC] with the opportunity to conciliate the claim." *Seymore*, 111 F.3d at 799.

**B.     Exceptions to the Exhaustion of Administrative Remedies Requirement**

"The Tenth Circuit has recognized two limited exceptions to the exhaustion rule." *Boe v. Alliedsignal Inc.*, No. CIV. A. 99-2188-GTV, 2000 WL 343792 (D. Kan. March 29, 2000). The first exception applies "when the unexhausted claim is for discrimination like or reasonably related to the allegations in the EEOC charge." *Simms v. Oklahoma, ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1327 (10th Cir.) (quotation omitted), *cert. denied*, — U.S. — , 120 S.Ct. 53 (1999). "The second exception allows for judicial consideration of claims 'not expressly included in an EEOC charge . . . where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made.'"[3] *Boe*, 2000 WL 343792 at *2 (quoting *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 416 n. 7 (10th Cir. 1993)).

   1.     *"Like or Reasonably Related" exception*

Plaintiff argues that this exception applies to her retaliation claims because they are "like or reasonably related" to the age discrimination claim contained in her EEOC charge of discrimination. In making this argument Plaintiff focuses on the allegation that Defendant Jaramillo issued an ultimatum to Plaintiff in March 1998 that she either "accept a list of 21 untenable and humiliating conditions or be terminated." (Surreply at 2.) Plaintiff contends that because the EEOC investigated this incident, "Defendants cannot claim that the ultimate retaliatory conduct, the March ultimatum, was not reasonably related to the Discrimination

---

[3] Prior to *Boe*, it was unclear whether this second exception was actually separate and distinct from the "like or reasonably related" exception. *See Welsh*, 1999 WL 345597, at *3 n. 3 ("We need not decide at this point whether the scope of a reasonable EEOC investigation is a separate exception from the exhaustion rule or simply a part of the process for determining what allegations are reasonably related to claims stated in the charge.").

Charge." *Id.*

This alleged act of retaliation, like all the other allegedly retaliatory conduct described in Plaintiff's complaint, occurred prior to Plaintiff's April 2, 1998 resignation. It was not until June 22, 1998--almost two months after Plaintiff's resignation--that she filed her EEOC charge of discrimination. "[W]here a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge." *Seymour*, 111 F.3d at 799 (footnote omitted); *see also Simms*, 165 F.2d at 1328 ("All of [plaintiff's] allegations of pre-1995 retaliation concerned facts occurring prior to the filing of the second EEOC complaint. Thus, [plaintiff] does not qualify for the reasonably related exception . . . .").

Although the Tenth Circuit did not foreclose the possibility that there may be a case in which a "retaliatory act that occurs prior to the filing of a charge and is not alleged in the charge could reasonably relate to the charge," *Seymore*, 111 F.3d at 799 n. 5, the Plaintiff has not identified such a case nor offered compelling reasons why this case should deviate from the general rule. Moreover, Plaintiff's charge of discrimination did not even mention the March 1998 ultimatum. Her charge alleged that she was constructively discharged because of Mesa Vista Consolidated Schools' discriminatory employment practices. (Ex. D to Defendants' Memo.) Plaintiff specifically alleged that younger females received training that Plaintiff was denied and that the Superintendent of the Mesa Vista Consolidated Schools physically and verbally threatened her.[4] *Id.* In the "Statement of Discrimination" section Plaintiff stated, "I believe that I

---

[4] Although the charge of discrimination does not mention Defendant Jaramillo by name, the reasonable inference to be drawn from the charge is that the Superintendent at the time was Defendant Jaramillo.

was discriminated against on the basis of my age, 43, which constitutes a violation of the ADEA of 1967, as amended." *Id.*

In contrast to the age discrimination allegations contained in Plaintiff's EEOC charge of discrimination, Plaintiff's retaliation claims contained in her first amended complaint focus on Defendants' alleged retaliation against Plaintiff for reporting Defendant Jaramillo's allegedly discriminatory conduct to the School Board and for providing Defendants with a tort notice. (Count II of Compl.) According to Plaintiff's first amended complaint, Defendants' retaliation included comments made in her performance evaluation. *Id.* The only commonality between Plaintiff's charge of discrimination alleging age discrimination and her judicial complaint alleging retaliation is that Defendant Jarmillo was involved in both. This does not satisfy the requirement that claims in a charge of discrimination and in a judicial complaint "must, at a minimum, describe the same conduct and implicate the same individuals." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (quoted with approval in *Welsh*, 1999 WL 345597 at *3.); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997) (rejecting plaintiff's claim "that his hostile environment claim is reasonably related to his wrongful discharge claim simply because all of [plaintiff's supervisor's] conduct is related."); *Welsh*, 1999 WL 345597, at *3 ("Because her harassment claims are based on completely different allegations from her gender discrimination claim, the two types of claims are not reasonably related."); *Malone v. MAPCO, Inc.*, No. 91-5073, 1992 WL 26788, at * 1 (10th Cir. Feb. 11, 1992) ("[W]e hold that plaintiff's sexual harassment claim is not reasonably related to her claims of discriminatory discharge based on race, sex, and age . . . .").

## 2. *Scope of a Reasonable EEOC Investigation*

Courts have varied in their interpretation of how to apply this exception. Some courts have suggested that if the EEOC actually conducted an investigation into the plaintiff's administrative charges, then the inquiry into whether a claim could reasonably be expected to flow from the EEOC's investigation of the administrative charges is defined by the scope of the actual investigation. *See, e.g., Hubbard v. Rubbermaid, Inc.,* 436 F. Supp. 1184, 1193 (D.Md. 1977) ("The EEOC's reasonable investigation of the original charges . . . was limited to [ ] three specific areas of Rubbermaid's employment practices [wages, benefits, and terms and conditions] and delimits the scope of this action."); *see also* 4 Lex K. Larson, Employment Discrimination ¶ 76.06[1][e] ("[I]f an investigation has actually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the [EEOC's] investigation.").

In *Boe*, however, the Tenth Circuit seemed to take a different approach. The court first found that the plaintiff's disparate impact claim would fall within the scope of an EEOC investigation that could reasonably be expected to grow out of the allegations actually pled in his charge of discrimination. *Boe*, 2000 WL 343792 at *5. The Tenth Circuit nevertheless went on to find that the EEOC had actually begun to investigate the Defendant's leave of absence policy, which was, in part, the basis of the plaintiff's disparate impact claim. *Id*. Because it appears that the Tenth Circuit favors an analysis of the *Martin* exception that looks both to the scope of an actual EEOC investigation and a hypothetical one, I will consider both the scope of the actual investigation performed by the EEOC in this case and the scope of a hypothetical EEOC investigation that could reasonably have been expected to grow out of Plaintiff's EEOC charge of discrimination alleging age discrimination.

#### a. actual EEOC investigation

In Plaintiff's surreply she argues that because the EEOC actually investigated some of the alleged retaliatory conduct, her retaliation claim should not be dismissed. This argument focuses on the September 25, 1998 letter from the EEOC investigator to Plaintiff's counsel in which the investigator recites Defendants' response to the charge of discrimination. The letter states in part:

> On 3/30/98 a meeting was held with the Bd. Of Directors. You and the Supt. reached an agreement and you signed each page of the list of Mr. Jaramillo's conditions. Within three days you tendered your forced resignation of 30 day notice and in the same breadth requested leave during the remaining thirty days.

(Ex. A to Pl. Surreply.) Based on this statement, Plaintiff contends that "Defendants cannot claim that the ultimate retaliatory conduct, the March ultimatum, . . . was not within the scope of the EEOC investigation." (Surreply at 2.)

This argument is unpersuasive. Allegations concerning the March 1998 board meeting appear in Count I of Plaintiff's amended complaint, which alleges age discrimination-- not retaliation.[5] Count II, which alleges Title VII and ADEA retaliation, incorporates all previous allegations but focuses on Plaintiff's alleged reporting of Defendant Jaramillo's discriminatory conduct to the School Board and Plaintiff's filing of a tort notice. Count II further alleges that Plaintiff was subject to harassment and adverse employment actions already described in the complaint. The only specific retaliatory actions alleged in Count II concern Plaintiff's performance evaluations. A fair reading of Plaintiff's judicial complaint suggests that she alleged that the March 1998 ultimatum was motivated by age discrimination, not retaliation. Therefore,

---

[5] At paragraph 11 Plaintiff alleges, "[at] a Board meeting at the end of March 1998, Defendants presented Ms. Ocana with an ultimatum: either accept a list of 21 untenable and humiliating conditions or be terminated."

even if the EEOC did investigate the March 1998 ultimatum, this does not lead to the conclusion that the EEOC actually investigated Plaintiff's retaliation claims, which focus on her filing of the tort notice, reporting Defendant Jaramillo to the School Board, and receiving poor performance evaluations.

This conclusion is supported by the fact that Plaintiff has failed to identify any evidence in the record establishing that the EEOC actually investigated the allegations of retaliatory conduct specifically contained in Count II of her amended complaint. As discussed above, the Charge of Discrimination does not allude to retaliation. (Ex. D to Defendants' Memo.) The Request for Information states that the three issues being investigated are constructive discharge, harassment, and training. *Id*. The Notice of Charge of Discrimination states that a charge of age discrimination had been filed against Defendants; the box for "retaliation" is blank. (Ex. D-1 to Defendants' Memo.) The September 25, 1998 letter from the EEOC investigator to Plaintiff's counsel clearly states that the EEOC had received Defendants' reply to Plaintiff's charge of discrimination alleging age discrimination "by being forced to resign from employment, being denied training, and by being verbally and physically threatened by the Supt. of Schools." (Ex. A to Pl. Surreply.) Based on this evidence, I conclude that the scope of the actual EEOC investigation did not encompass the alleged retaliatory conduct.

**b.     hypothetical EEOC investigation**

Nor is there any reason to believe that a reasonable EEOC investigation of Plaintiff's charge of discrimination would have revealed any facts regarding Plaintiff's retaliation claim. Plaintiff's charge of discrimination alleges that she was forced to resign because of "discriminatory employment practices." The only specific allegations in her charge concern denial

of training and harassment by Defendant Jaramillo. These allegations do not support the conclusion that during the course of a reasonable investigation the facts concerning Plaintiff's retaliation claim (her filing of a tort notice and reporting Defendant Jaramillo to the School Board) would come to light. Therefore, the *Martin* exception does not save Plaintiff's retaliation claims. *See Martin*, 3 F.3d at 1416 n. 7 (holding that plaintiff's harassment by two employees "could not reasonably have been expected to come to light in the scope of the investigation of the complaint filed by" the plaintiff alleging that the defendant corporation and its owner had a policy of tolerating and accepting harassment); *Welsh*, 1999 WL 345597, at *3 (ruling that a reasonable investigation of plaintiff's claim of gender discrimination for failure to promote would not reveal any facts regarding plaintiff's sexual harassment claims); *Malone*, 1992 WL 26788, at *1 (holding that "plaintiff's sexual harassment claim . . . could not reasonably be expected to follow from the EEOC's investigation of her initial charges" of discriminatory discharge based on race, sex, and age).

IT IS THEREFORE ORDERED that Defendants' Motion to Partially Dismiss Amended Complaint, (Doc. No. 31), should be granted and Count II of Plaintiff's second amended complaint alleging ADEA and Title VII retaliation claims should be dismissed.

_____
UNITED STATES DISTRICT JUDGE